FIRST NATIONAL BANK OF YOUNGSTOWN v. HUGHES and another.

*(Circuit Court, N. D. Ohio. ———, 1881.)*

1. NATIONAL BANKS—TAXATION OF DEPOSITS—DISCLOSURE OF DEPOSITORS.

   A national bank may be compelled to disclose the names of its depositors, and the amounts of their deposits under the compulsory process of a state court in order to ascertain whether any money deposited therein, subject to taxation within the county, has not been duly returned for that purpose by the owners.

2. SAME—INJUNCTION.

   A federal court cannot, in such case, stay the proceedings in the state court by writ of injunction.—[Ed.

In Equity. Demurrer and Motion to Dissolve Injunction.

*Sidney Strong, A. W. Jones,* and *T. W. Sanderson,* of Youngstown, Ohio, for complainant.

*Monroe W. Johnson,* of Youngstown, and *W. C. McFarland,* of Cleveland, for defendants.

BAXTER, C. J. The complainant is a national bank, organized under the act of congress, and has its place of business in Youngstown, Mahoning county, Ohio. It complains of James B. Hughes, auditor, and Monroe W. Johnson, prosecuting attorney, of said county, and charges that previous to and on the second Monday of April, 1880, it was, and has ever since been, engaged in the business of banking, authorized by law, and that it then had and has continued to have not less than $400,000 of deposits, which it employed in its business, and from which it derived profit. Protesting that "it is not subject to any visitorial powers other than such as are authorized by said act of congress or vested in the courts of the country," it proceeds to complain "that the said James B. Hughes, auditor of Mahoning county, pretending to act by authority of section 2782, Revised Statutes of Ohio, did, on or about the twenty-second day of June, 1880, issue and cause to be served upon William H. Baldwin, the cashier of your orator, a written order commanding the said Baldwin, as such cashier, to appear before said auditor on the twenty-

second of June, 1880, and give testimony under said section 2782, and to bring with him the books of account of your orator showing the amount of deposits in your orator's bank on the day preceding the second Monday of April, 1880, and the names of its depositors, and the amounts deposited by each; that in obedience to said order Robert McCurdy, your orator's president, did appear before said auditor as commanded, and submitted himself as a witness to testify, but did not produce before said auditor said books of account, or any of them, and, under advice of counsel, refused to produce the same; that thereupon the said James B. Hughes, though not objecting, but assenting, to the appearance and offer to testify of said Robert McCurdy in place of said William H. Baldwin, cashier as aforesaid, advised and encouraged thereto, and aided by the said Monroe W. Johnson, prosecuting attorney for said Mahoning county, and pretending to act by authority of section 2783, Revised Statutes of Ohio, did, on the twenty-fifth day of June, 1880, apply to the probate judge of said Mahoning county to issue a subpœna for the appearance of the said William H. Baldwin, as cashier as aforesaid, before said probate judge, and to bring with him said books of account of your orator," and "that in compliance with the application of said auditor the said probate judge did, on said last-named day, issue and cause to be served upon said William H. Baldwin, as cashier of your orator, his subpœna, commanding said Baldwin to appear before him to testify, and to bring your orator's books of account showing the amount of deposits in your orator's bank on the day preceding the second Monday of April, 1880, and the names of its depositors, and the amount deposited by each; that the said William H. Baldwin is now, as such cashier, under said subpœna, commanded to appear before said probate judge, and there to produce said books of account of your orator, and the said James B. Hughes, auditor, and Monroe W. Johnson, prosecuting attorney, threaten that they will, and they are about to, insist before said probate judge that the said William H. Baldwin shall testify, under oath, as to the amount of deposits in said bank on said day,

the names of depositors, and the amounts deposited by each, and shall produce your orator's said books of account for the inspection of said auditor and said probate judge, and also threaten that upon the failure of said William H. Baldwin so to testify and produce said books of account, they will apply to said probate judge to adjudge said William H. Baldwin in contempt of the probate court, and to punish him for the same, and, unless restrained, the said James B. Hughes, auditor, and Monroe W. Johnson, prosecuting attorney, will, by the order of said probate court, and under its penalties for contempt, compel the said William H. Baldwin to produce your orator's books of account for such inspection."

Complainant avers that "none of said acts done, or threatened to be done," by defendants, "and none of the proceedings had by said probate judge, are in anywise authorized by said act of congress, or by any act of congress, and that the production of your orator's books of account before either said auditor or said probate judge is not authorized by either of said sections of the Revised Statutes of Ohio, or any of the laws of said state; and that all of said acts are prohibited by section 5241 of the Revised Statutes of the United States, and that the necessary result of said acts so as aforesaid threatened and about to be done, will be, by unlawfully exposing your orator's business affairs, to lessen public confidence in it as a depository of money, and to diminish its deposits, and greatly impair the value of the franchise with which it is invested."

Upon the allegations, duly verified by the oath of its president, the complainant prayed for an injunction to restrain the defendants James B. Hughes, auditor, and Monroe W. Johnson, prosecuting attorney, "from any further proceedings or attempts to inspect or have produced, before said auditor or said probate judge, any of the books of account or papers of your orator, and from any and all proceedings or attempts to compel the said William H. Baldwin, cashier of your orator, or any other of your orator's officers or servants having knowledge of its business affairs, to testify as to the deposit accounts or other accounts of your orator."

A preliminary injunction was granted. Defendants now appear and demur, and move to dissolve the injunction.

The auditor was, as we understand the case stated by the complainant, proceeding under and in exact accordance with sections 2782 and 2783 of the Revised Statutes of Ohio. These sections charge him with the duty of making correct tax duplicates of personal property taxable under the laws of the state; and, to enable him to discharge the responsible and delicate trust thus imposed on him, he is authorized and commanded, in case he has reason to believe, or shall be informed, that any person liable to such tax has made a false return to the assessor, to proceed to correct such return and charge the delinquent on the duplicate with the true amount for which he is liable; and to this end he is authorized to issue compulsory process, require the attendance of witnesses, and examine them on oath. But if any person so summoned shall neglect or refuse to attend, or, appearing, refuse to answer any lawful question propounded to him, the auditor is commanded to apply to the probate judge of the county to issue a subpœna for such contumacious witness to appear and give evidence before said probate judge; and in the event any person or persons so summoned by the probate judge shall fail to appear, or, appearing, shall refuse to give testimony, he shall be subject to like proceedings for contempt as defaulting witnesses duly summoned in actions pending in said probate court.

The complainant insists—*First*, that it is protected from the proposed investigation by section 5241 of the United States Revised Statutes. This section provides that no association (meaning national banking associations) shall be subject to any *visitorial powers* other than such as are authorized by this title (63) or are vested in the courts of the country.

But do the defendants, or either of them, propose the exercise of visitorial authority? We think not. Visitation, in law, is the act of a superior or superintending officer, who visits a corporation to examine into its manner of conducting business, and enforce an observance of its laws and regulations. Burrill defines the word to mean "inspection;

superintendence; direction; regulation." The exercise of no such authority is contemplated by defendants. They do not contemplate inspection, supervision, or regulation of complainant's business, or an enforcement of its laws or regulations. On the contrary, their purpose is to ascertain, in a legal way, and by legitimate testimony, whether any person had, at the time mentioned, on deposit with complainant any money subject to taxation in said county which had not been returned by the owners thereof for that purpose. Hence, the subpœna commanding the production of the complainant's books, in the manner and for the purpose stated, is not an exercise of "visitorial powers;" and it follows that the witness is not protected by said section from amenability to the probate court for his contempt in disobeying its mandate.

But complainant insists, *secondly,* that the proposed enforced exhibition of its books will expose its business, lessen public confidence, diminish its deposits and consequent profits, and impair the value of the franchise. We fail to see any sufficient reason for such grave apprehensions. But if complainant's fears were well founded, the state might still be entitled to the testimony demanded. Private rights must to a reasonable extent yield to the public necessities. It is on this ground that a witness possessing knowledge of facts material to the vindication of the rights of another may be compelled by judicial process to appear and give evidence in behalf of that other party, notwithstanding the evidence thus coerced may uncover the witness' private business and subject him to a civil action for damages. Such a witness thus duly summoned is even bound to make extraordinary efforts to attend. *People* v. *Davis,* 15 Wend. 602. For like reasons, and upon the same principles, persons in possession of written evidence, of whatsoever character, may be required to produce the same to be used as evidence; and it is no ground for the refusal of a witness to produce books or papers, when required by lawful authority, that they are private. *Burnham* v. *Morrissey,* 14 Gray, 226. Now if the courts are thus careful to assist private persons in procuring evidence for

the maintenance of their individual rights, why should the same power not be exerted in behalf of the public? Is the state, which represents the body politic, entitled to less consideration than its humblest citizen? No state can maintain its existence without revenue—a burden imposed by law on every one for the benefit of all. This burden ought to be equal and uniform, and the legislature requires the officers charged with the duty of making assessments for the purpose of taxation to enforce this just and beneficent rule. And among other powers conferred to enable them to do so, auditors are authorized to summon witnesses and examine them on oath. These enactments are reasonable, necessary, and just. The auditors, selected for their supposed intelligence and impartiality, act officially in the execution of these laws, and it is the duty of every citizen, when summoned, to respond and freely communicate all the information he may possess necessary to a full and impartial assessment of property for taxation.

But it is not incumbent on us to define the duty of the witness in the premises. When he refused to obey the auditor's subpœna, jurisdiction of the controversy—on the auditor's application to the probate judge to issue his subpœna commanding the witness to appear and give evidence before him —passed to and vested in the probate court, and hence, if the witness has any valid and sufficient excuse for his alleged contumacy, he must present and insist upon it before that tribunal. But the complainant replies for the witness, that, while the probate court has jurisdiction generally of controversies of this character, it has not such jurisdiction in cases in which national banks are parties, because, as it contends, the proceeding contemplated is in violation of their chartered rights. This objection has been disposed of. But if we concede complainant's claim of exemption, etc., the responsibility of deciding the question is with the probate court, and not with us.

The plain meaning of the bill, however, is that the probate court will make an erroneous decision. Possibly it may. All courts are liable to err. But the possibility that it may err

imparts to this court no authority to supervise its action. There are cases which, at the instance of a party, may be transferred from a state to a federal court, but this is not one of them. If it were, no attempt has been made to bring it here. The probate court still retains its jurisdiction of the case, and we cannot stay its action or encroach upon its authority without violating a positive act of congress: "The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy." Rev. St. § 720. And the supreme court, in the very last case before it involving an interpretation of this statute, says: "Except where otherwise provided by the bankrupt law, the courts of the United States are expressly prohibited, by section 720 of the Revised Statutes, from granting a writ of injunction to stay proceedings in a state court." *Harris* v. *Carpenter*, 91 U. S. 254.

We must, therefore, remit complainant to the probate court for such action as that court may, after due consideration, feel bound to take. The injunction will be dissolved. Defendants' demurrer will be sustained, and complainant's bill dismissed with costs.