Robert Hofeller and Toby Lewis, Appellants, v. General Candy Corporation et al., Appellees.

Gen. No. 37,111.

Opinion filed May 2, 1934.

WILLIAM FRIEDMAN, for appellants.

WALTER BACHRACH, for appellees; WALTER BACHRACH and PHILIP GLICK, of counsel.

MR. JUSTICE WILSON delivered the opinion of the court.

This is an appeal from a decree sustaining a demurrer to the second amended bill of complaint filed in the cause and dismissing the bill for want of equity. The bill charges that the complainants Robert Hofeller and Toby Lewis are the owners of 1,260 shares and 200 shares respectively of Class A stock of the General

Candy Corporation, incorporated under the laws of the State of Illinois. The bill is filed on behalf of themselves and such other owners of Class A common stock of the corporation as may elect to join in the suit.

The bill further charged that the corporation was formerly known as the Universal Theatres Concession Company, a manufacturing and trading corporation, and that at its annual meeting of stockholders held February 21, 1929, it adopted a resolution changing the name to that of General Candy Corporation and at the same time increased the capital stock of the corporation from 40,000 shares of Class A common stock of the par value of $5 each to 150,000 shares of the par value of $5 each and decreased the Class B stock from 40,000 shares at the par value of $5 each to 5,000 shares at $5 each; that at said meeting it was recommended that a stock dividend be declared and issued in payment of all previous cumulated and unpaid dividends, which had accrued prior to July 1, 1929; that the holders of Class A stock should be entitled to receive when and as declared fixed dividends at the rate of $2.50 per share per annum. It was further provided that the dividend on the Class A stock should be paid before that on the Class B stock; that no dividend should ever be paid or declared except from the surplus and/or net earnings of the corporation nor unless the current earnings shall be equivalent to $5 a share on the Class A stock then outstanding and would not result in reducing the tangible book value of the Class A stock outstanding below $30 per share; that except with the consent of the holders of not less than two-thirds of the Class A stock, the corporation shall not sell, lease or exchange or in any manner dispose of its property or business as an entirety, or increase the amount of the capital stock or create any other class of stock which would impair the value of the Class A stock or consolidate or merge with other

corporations or create any other funded debt secured by real estate; that in the event of involuntary liquidation or dissolution of the corporation the money shall be distributed by first paying to Class A stockholders $30 for each share of stock held by them, and secondly to the Class B stockholders at the rate of $30 for each share held by them and the balance of the assets of the corporation to be divided and distributed among the holders of all of the stock.

The bill further charges that the complainants purchased said stock with the understanding that they were to receive a dividend from the surplus or net earnings at the rate of $2.50 per share per annum; that there is now due and unpaid on Class A common stock a dividend for the last half of the year 1929 in the sum of $1.25; for the year 1930, $2 per share and for the year 1932 no dividends have been paid although a dividend of 25¢ per share has been declared on the Class A stock, payable October 1, 1932; that the total cash dividends declared for the years 1930, 1931 and 1932 amount to about $1 per share; that on December 31, 1929, the surplus profits of the corporation were $475,506.93, and that the corporation and its subsidiaries had on hand in cash and in banks the sum of $93,930.84, and marketable investments of $27,863, with accounts receivable and inventories showing total current assets of $470,732 in addition to fixed assets of $299,989.81; that the good will, trade marks, options, leaseholds and similar items aggregated $325,000 and there was an additional investment in the Williamson Candy Co. of Brooklyn, New York, amounting to $124,740.42, so that the total net worth of the company in excess of liabilities amounted to $1,225,506.93. The bill further charges that on December 31, 1930, the balance sheet of the corporation indicated a surplus profit of $547,645.10, of which $203,224.50 was cash on hand and in banks, and marketable investments of

$52,151.41, and that the total net worth of the company, after allowing for reserves for depreciation, was in excess of liabilities to the amount of $1,305,145.10; that on December 31, 1931, as shown by the consolidated balance sheet, after adding the surplus profits, cash on hand, marketable investments, less reserves for depreciation, the total net worth was $1,270,436.59; charges that at this time there was 114,795 shares of Class A stock and that the corporation had on hand sufficient to pay the required dividend of $2.50 per share; that on July 31, 1932, after allowing for all receipts, disbursements and investments there was available for dividends, without impairing the capital structure, the sum of $337,003.15, out of which a dividend of $2.50 per share could be paid, leaving $69,690.65 for working capital, exclusive of the accounts receivable and the inventories.

The bill further charges that in the year of 1925, Stein, Alstrin & Co. sponsored a deal in the stock of the General Candy Corporation, then known as the Universal Theatres Concession Company, and came into control and thereupon negotiated with the Williamson Candy Company, as a result of which George H. Williamson was made president of the General Candy Corporation and M. H. Sobel, vice president, and that thereupon the company became prosperous and accumulated a profit, but that the said George H. Williamson began to show a feeling of resentment and dissatisfaction by reason of his position in the company and began to plan to increase his power by causing a reduction of the outstanding shares of stock; that at a meeting of the stockholders held February 17, 1931, he controlled the board of directors and did not favor the declaration of a dividend in any sum commensurate with the earnings and surplus on hand; that said Williamson started a systematic system to purchase the outstanding stock of the corporation with corporate funds and as a result of which 31,705 shares

of said outstanding stock were purchased by the corporation, although no authority was granted by the board of directors; that the record does show that at a purported special meeting of the board of directors held on December 16, 1931, authority was granted to the said Williamson to purchase 18,970 shares, but it is charged that no actual meeting of the board was held on said day; charges further that the total number of stockholders is about 200, many of whom hold small parcels of stock; charges that the company was possessed of certain securities which cost $54,778.30, and without any proper action on the part of the board of directors these securities were sold at a loss to the corporation of $18,983.83; charges that the said Williamson dominates the board of directors and some of the directors are dummies, and not holders of any considerable portion of the stock of the corporation; charges further that on July 19, 1932, complainants requested that the president declare a dividend and that thereupon the corporation declared a dividend in the amount of 25 cents, payable October 1, 1932; charges that this amount is inequitable and unjust to the stockholders; charges that the Williamson Building Corporation is the owner of a certain building at 4701 Armitage avenue, Chicago, occupied by the said General Candy Corporation as a tenant; that the latter corporation holds a lease upon said building for a term of 10 years at an annual rental of $27,000 and holds an option to purchase the same at $480,000; that the said George H. Williamson and the members of his family own substantially all the shares of the Williamson Building Corporation and that by reason of his domination the said Williamson caused the General Candy Corporation to pay the sum of $10,750 as advanced rent at the rate of $2,250 per month for the months of July, August, September and October during the year 1932 and $1,750 on account of the month of November, 1932; that said directors take the posi-

tion that they control the General Candy Corporation and that they "will if they choose" use the surplus money in the exercise of its option to purchase the said building and that the said Williamson stated that "he will do so if the complainants keep on making trouble"; charges further that if this is done it will redound to the almost exclusive use of Williamson and the members of his family.

The bill prays for an answer but not under oath and seeks to discover the amount and value of the property, moneys, interest and securities, etc. of the defendant, General Candy Corporation, and that an accounting be taken and thereafter the board of directors be ruled to declare a dividend out of the surplus and profits to the Class A stockholders and that the directors be restrained from the further purchase of stock of the corporation with corporate funds or securities of other companies and from exercising the option to purchase the property of the Williamson Building Corporation. Attached to the bill as exhibit "A" is the balance sheet of the General Candy Corporation for December 31st of the years 1929, 1930, 1931 and 1932.

The second amended bill of complaint was filed May 25, 1933, and charges that the complainants were possessed of their stock for about three years last past; consequently it follows that their stock must have been purchased after the charged increase in the shares of the Class A stock and after the year 1925 when Stein, Alstrin & Co. attempted to sponsor the deal in the General Candy Corporation and after the month of March, 1929, when Williamson came into the control of the company through the reorganization by reason of the consolidation of the Williamson Candy Corporation and the Universal Theatres Concession Company. It is charged in the bill that the stock purchased by the corporation was over the period from January, 1931 to December, 1931, but there is no

charge in the bill that Williamson or the directors of the corporation intended to make further purchases of such corporate stock by the corporation. Neither is there any direct charge in the bill, namely, that the directors intend to and will use the surplus money of the corporation in the purchase of the Williamson Building Corporation under the option granted to the General Candy Corporation. The only allegation is that the directors took the position that they will if they choose use the surplus money in the exercise of its option. The lease to this building on Armitage avenue owned by the Williamson Building Corporation was entered into June 1, 1929, and contained the option of purchase which the defendant corporation at that time evidently considered of value to the company. It would not appear to be good business policy to make the purchase of this building at this time under present building conditions, but in view of the fact that there is no direct charge in the bill that this will be done, we are without power to draw inferences to that effect. It is charged that Williamson and his family and the directors control over 60,000 shares of the outstanding stock. As a matter of fact the officers and directors of the corporation who were made parties defendant to the bill evidently are possessed of, as charged in the second amended bill of complaint, in excess of 72,000 shares. While this gives these stockholders a dominant position in the company, this is not unusual. It also carries with it an added responsibility, and the heaviest loss, if any loss there should be by reason of the management of the defendants, would fall upon those charged in this proceeding. The main purport of the bill seems to be that the corporation having money on hand sufficient to pay a dividend, it should be required to do so.

In addition to the $1 cash dividend paid, it appears upon the face of the bill that, in what was known as the "flush" period of 1929, this corporation, as did many

other corporations, declared a stock dividend evidently under the misapprehension that good times were to continue. If this stock dividend had not been issued, the amount of cash required to pay the regular annual dividend would not have been as great. The complainants represent practically a 1 per cent interest in the total Class A stock. This, however, would not deprive them of being heard in a court of equity if facts were charged in the bill showing that the directors were fraudulently operating the company for their own use or voting themselves salaries inconsistent with the earnings of the company or persisting in a course of operation which would ultimately result in such loss as would end in a forced liquidation. Stripping the bill of complaint of all its verbiage, it is practically a request of the chancellor to compel the corporation to declare a cash dividend. Courts will not compel such action on the part of a corporation unless the withholding of the dividend is oppressive and entirely without merit. Courts of chancery will not concern themselves with the operations of a private corporation except on the ground of fraud or an impairment of the capital structure which would result in complete or very substantial loss. *Gehrt v. Collins Plow Co.*, 156 Ill. App. 98.

Leaving out of consideration the surplus in the hands of subsidiary companies in which the parent company, one of the defendants here, owns stock, we can see no reason for compelling a dividend, particularly in view of the present existing conditions and the present attitude of all corporations to conserve as far as possible its working capital for future contingencies. The question of a dividend at this time is one which rests wholly in the business judgment of the board of directors and a court of chancery should not substitute its judgment for that of men actively engaged in business in the community. *Hall v. Woods,* 325 Ill. 114.

While the by-laws may provide for a fixed dividend per annum on a certain class of stock, there may come a time, as there already has, when it would be fatal to the best interests of all the stockholders to part with ready cash. In fact it might be very inadvisable inasmuch as there would be a possibility of the loss of the entire principal. *Gibbons v. Mahon,* 136 U. S. 549.

We are in accord with the position taken by the chancellor in sustaining a demurrer to the amended bill of complaint and for the reasons stated in this opinion the decree of the circuit court is affirmed.

*Decree affirmed.*

HALL, P. J., and HEBEL, J., concur.