Continental-Midwest Corporation, Plaintiff-Appellee,
v. Hotel Sherman, Inc., Frank W. Bering, James
A. Hart, Patrick H. Hoy, L. Julian Harris, W. P.
Bradtmiller, David Levinson, Roger S. Bloch, and
Ambassador East, Inc., Defendants-Appellants.

**Gen. No. 47,061.**

First District, Third Division.

March 20, 1957.

Released for publication April 24, 1957.

Sonnenschein, Berkson, Lautmann, Levinson & Morse, of Chicago, and D'Ancona, Pflaum, Wyatt & Riskind, of Chicago for defendants-appellants; David Levinson, John J. Faissler, Frank C. Bernard, L. Julian Harris, and C. Harker Rhodes, Jr., of Chicago, of counsel.

Albert E. Jenner, Jr., Edward H. Hatton, and Thomas P. Sullivan, for plaintiff-appellee; Johnston, Thompson, Raymond, Mayer & Jenner, of Chicago, of counsel.

JUDGE KILEY delivered the opinion of the court.

This is an appeal by defendants from an order for a temporary injunction (Sec. 78, CPA) [Ill. Rev. Stats. 1955, ch. 110, § 78] in favor of plaintiff, a minority stockholder in Hotel Sherman, Inc., referred to herein as Sherman. The order restrains defendants (a) from voting Sherman stock held by its subsidiary, Ambassador East, Inc., referred to herein as Ambassador; (b) from purchasing, acquiring or exchanging any of the stock of Sherman; (c) from declaring or paying dividends by Sherman until its current assets exceed its current liabilities; and (d) from voting upon or effecting mergers if the same requires voting the stock of Sherman held by Ambassador.

The order was entered August 10, 1956, upon pleadings and argument of counsel, and most of the relevant facts are admitted. The order was intended to preserve the status quo until final disposition of the issues. The question on appeal is whether the chancellor abused his discretion in granting the injunction.

Sherman and Ambassador are Delaware corporations with offices and principal business in Chicago. They are owners respectively of the Hotel Sherman and Ambassador East Hotel. There are about 101,000 shares of Sherman stock outstanding, of which plaintiff holds more than twenty per cent, Ambassador about twenty-five per cent, and a voting trust holds about thirty-nine per cent. Sherman owns about seventy-five per cent of Ambassador stock, and several directors and officers are common to both corporations and are also trustees of the voting trust.

190

The complaint, filed July 31, 1956, charged generally that the majority ownership by Sherman of Ambassador stock, and the common officers, trustees and interlocking directorates of the corporations resulted in the domination of Sherman affairs to the detriment of minority shareholders. Specifically, it charged that Sherman purchased, without the approval of stockholders, large amounts of outstanding Sherman stock, using Sherman cash, thereby impairing Sherman capital and wasting its assets; the borrowing of $1,100,000 to purchase and retire 7,805 shares of Sherman; the declaring and paying of a $4 dividend in 1956 for no corporate purpose, but on the contrary, to permit the trustees of the voting trust to pay off a loan made to purchase, in 1955, 5000 additional shares of Sherman; and the calling of a meeting for August 2, 1956, without giving requisite notice under Delaware law, to eliminate from the Sherman charter the cumulative voting right, in fraud of the minority and to preclude minority representation. The chancellor found expressly there was no question of either fraud or insolvency.

Issues raised by the pleadings were (a) whether plaintiff's suit is barred by res judicata or unclean hands; (b) whether the chancellor had jurisdiction to interfere with the administration of Delaware corporations respecting dividends, mergers, and acquisition of common stock; (c) whether the Ambassador had the right to vote Sherman stock; and (d) whether the Sherman stockholders had the right to eliminate the cumulative voting provision.

On August 2, 1956, the chancellor entered an order permitting defendants to proceed with the special meeting of August 2, on condition that any action taken was subject to final decision upon the main case. The issue with respect to cumulative voting was continued generally and therefore was removed from the

191

scope of this proceeding and the parties agree that that issue is not before us.

This is a representative suit by a minority stockholder (Mayer v. Oxidation Products Co., Inc., 110 N. J. Eq. 141, 159 Atl. 377) and the first question is whether the exercise of jurisdiction by the chancellor is an exercise of visitorial power by Illinois over the internal affairs of these Delaware corporations so as to invalidate the injunctional order. The term visitorial power was described by Judge Story, in treating of charitable corporations, as "the controlling authority of its legal visitor who . . . may amend and repeal its statutes, remove its officers, correct abuses, and generally superintend the management . . . ." (Dartmouth College v. Woodward, 17 U.S. (4 Wheaton) 518, 675–676.) In Mayer v. Oxidation Products Co., Inc., 159 Atl. 377, it was said that the idea of visitorial power derived from canon law and was in the eighteenth century applied extensively as part of common law to charitable corporations, especially colleges, and as applied "may be defined as the exclusive right of the founder of a corporation . . . to make by-laws for the corporation and to adjudge disputes arising thereunder . . . . The visitor was not the proper judge in all disputes among members of the corporation or relating to its internal affairs, but only in cases arising under its by-laws; controversies under the general law of the land were adjudicated in the public courts . . . . In our country it has been laid down that the legislature is the visitor of all corporations . . . ." The chancellor in that case said this had little meaning for him because he had found no case "of the exercise of visitorial power over a civil corporation."

■ Defendants do not claim the Chancellor was without jurisdiction, and could not successfully make such a claim in the face of Babcock v. Farwell, 245 Ill.

14, Voorhees v. Mason, 245 Ill. 256, and Williamson v. Missouri-Kansas Pipe Line Co., 56 F.2d (7th Cir.) 503. The question is not whether the Chancellor had jurisdiction, but whether he exercised his jurisdiction properly. (Williamson v. Missouri-Kansas Pipe Line Co., 56 F.2d 503, 507.) In Sprague v. Universal Voting Machine Co., 134 Ill. App. 379, 383, cited by defendants, the court did not "determine whether or not an exception to the general rule exists where . . . all the property of the corporation is within the state, its officers reside here, and the act sought to be restrained is claimed to be ultra vires."

■ Under the facts in this case, where all the actions complained of took place in Illinois, all the corporate assets are located in Illinois, all corporate business is done in Illinois, and all officers and directors reside in Illinois, it would be unjust to remand plaintiff to the courts of Delaware. We think justice, expediency, and the policy of Illinois compel the conclusion that the Chancellor did not abuse his discretion through undue interference in the affairs of the Delaware corporations. (Voorhees v. Mason, 245 Ill. 256.)

■■ We need not consider defendants' contention that Rubin, who made the affidavit for the complaint, has "unclean hands" which preclude plaintiff's suit. Under a contract of purchase, he is the "equitable and substantial" owner of the Sherman stock held by plaintiff (Stevenson v. Loehr, 57 Ill. 509), and did, as a Sherman director, vote for execution of an option to buy that stock and also voted for a $1,100,000 loan to buy Sherman stock held by him and the Morrison Hotel, of which he is president. If the unclean hands doctrine is applicable, it is limited to these transactions (Carpenters' Union v. Citizens Committee, 333 Ill. 225, 250), and since we shall hereinafter find erroneous, on other grounds, the order restraining the purchase of stock, we do not reach the question of

unclean hands. We do not decide whether Rubin's participation in the two transactions precludes alleging those transactions as part of a pattern of Sherman stock purchases of which plaintiff complains.

██ There is no merit to the contention that the decree in the Circuit Court in Ross v. Hotel Sherman, Inc., Hart et al., No. 54 C 6151, is res judicata with respect to the instant suit for an injunction to restrain the voting by Ambassador of Sherman stock. The answer discloses that the Ross suit was "dismissed." Nothing appears to disclose the substance of the motion to dismiss and we are not at liberty to make the necessary assumptions in favor of the motion or decree. We see no merit either in the similar contention made with respect to the case of Rubin and Morrison Hotel, Inc. v. Sherman et al., No. 56 C 5033, in the Circuit Court of Cook County. That suit made allegations of the interlocking officers and directors as in the instant suit, the domination of Ambassador by the defendants, and the plaintiffs' fears that unless restrained, defendants, at the April, 1956, meeting, would vote the Sherman stock held by Ambassador in violation of Delaware law and with harm to the minority stockholders. Plaintiffs moved for a temporary injunction and the relief was denied. The instant complaint contains several allegations which were not made in the Rubin-Morrison Hotel suit. We hold that neither of the previous actions is res judicata of any issue in the present proceeding.

██ The pleadings, upon which the chancellor acted, raised issues of fact and law and no evidence was heard. The order was justified, if at all, therefore, upon the basis of preserving the status quo. (Gillam v. 661 Sheridan Apartments, Inc., 1 Ill.App.2d 11.)

The parties agree that an essential element in applying this extraordinary remedy in this instance is the

194

probability of plaintiff's success in the main case. The prayer for relief at the final hearing is that the injunction sought, pendente lite, "be made permanent"; that plaintiff be permitted to inspect the Sherman books and minutes; and for "such other and further relief as may be appropriate."

Defendants contend that the chancellor in enjoining Ambassador from voting its Sherman stock apparently misconceived that stock to be treasury stock; that there is no showing of harm to plaintiff should Ambassador vote that stock; that even if Ambassador did not vote the stock the trustees of the voting trust would still vote a majority of the stock and thus control the meetings; and that if the stock cannot be voted, a 20 per cent minority interest in Ambassador would be prevented from effective participation by Ambassador in Sherman.

■ The chancellor could reasonably have decided it was probable that under proper evidence Ambassador would eventually be restrained permanently from voting its Sherman stock. The parties agree that the substantive law of Delaware applies and Section 160 of the Delaware Corporation Law prevents a corporation from voting, directly or indirectly, its own capital stock. If the Sherman stock held by Ambassador is "indirectly" treasury stock, the voting of that stock is illegal and ought to be restrained in any event. The Chancery Court of Delaware in Italo Petroleum Corp. v. Producers' Oil Corp., 20 Del. Ch. 283, 174 Atl. 276, adopted the rule that where a subsidiary owns stock in the parent, and the parent corporation completely dominates the subsidiary, the latter should not be allowed to vote the stock of the parent. The court added that if there are cases where the subsidiary should be allowed to vote its parent's stock, "those cases should rest on an exceptional state of facts." The decision of the Delaware Chancery Court in the Italo

195

case was not appealed and, although decided in 1934, so far as we can determine it is the only decision in that state on the precise question involved here. The Chancery Court of Delaware is at least equal to the Superior Court of that state, and the federal courts have held themselves bound by the decisions of the Superior Court where there is no showing that the decision was manifestly in error. (Stinson v. Edgemoor Iron Works, 55 F. Supp. (D. Del.) 861.) Defendants have given us no convincing reason why the Italo case is not the law of Delaware, and in the absence of such a showing, we follow the example of the federal courts and accept the Chancery Court's holding as a precedent for the instant decision. On this point, we are unable to anticipate from the pleadings that defendants will be able to show that this is an exceptional case to which the Italo rule is inapplicable, and we think the chancellor below could reasonably determine that the plaintiff would ultimately be successful. We are therefore impelled by the reasoning and ruling in the Italo case to conclude that the chancellor did not abuse his discretion in restraining, pendente lite, Ambassador from voting its Sherman stock.

This would not necessarily be true of "any of its present or future partially . . . owned" subsidiaries, or of "any companies, partnerships, or other entities with which it is or may become associated." The extent of its ownership and character of its association would have an important bearing on this question. The preservation of the status quo was justified only in so far as it related to the legality of Ambassador voting Sherman stock.

It could not be seriously contended that the defendants should be permanently enjoined from purchasing or exchanging any Sherman stock; or from declaring or paying dividends unless the current assets exceed current liabilities by the aggregate amount of the divi-

196

dends to be declared or paid. Delaware law does not prohibit the payment of dividends when the current liabilities of the corporation exceed the current assets (Section 170 (a), General Corporation Laws of Delaware), and we cannot anticipate the hearing on the merits and say it is likely the chancellor would decide that any future payment would be a fraud upon the minority interests or an impairment of capital such as to warrant the substituting of the chancellor's judgment for that of the directors of the corporation. (Hofeller v. General Candy Corp., 275 Ill. App. 89, 96.) There is no allegation of any threatened future dividend action, no claim of fraud, oppression or insolvency, and no question that the payment of dividends should be left to the honest decision of the directors of the corporation.

The declaration and payment of dividends and the purchasing, acquiring or exchanging of Sherman stock are not related to the voting by Ambassador of Sherman stock. They would be related only if the voting by Ambassador of Sherman stock was required for carrying out those corporate activities. It is unfair to implicitly restrain the power of the majority stock held in the voting trust which is unaffected by the question of the legality of Ambassador voting Sherman stock. For this reason, we think the Chancellor abused his discretion in restraining the payment of dividends and that part of the order is invalid.

What we have said about the payment of dividends applies with equal force to the purchase of outstanding stock of Sherman. In the absence of evidence, there is no reason for the Chancellor to substitute his judgment for that of the directors of Sherman with respect to stock purchases or exchanges, and that part of the order is also invalid. The same is true of that part of the order restraining mergers.

197

We conclude, therefore, that the injunctional order is valid so far as it restrains, pendente lite, Ambassador from voting its Sherman stock and to that extent the order is affirmed. In all other respects, the order is erroneous and in those respects it is reversed.

Affirmed in part.
Reversed in part.

FEINBERG, P. J., concurs.

LEWE, J., took no part.