STATE of Minnesota, by Jim LORD, its Treasurer, Appellant,

v.

The FIRST NATIONAL BANK OF SAINT PAUL, a national banking association, Respondent.

No. 81–311.

Supreme Court of Minnesota.

Dec. 17, 1981.

Warren Spannaus, Atty. Gen., and Richard S. Slowes, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Briggs & Morgan, Frank Hammond, Alan H. Maclin, St. Paul, for respondent.

John S. Jackson, Minneapolis, for amicus curiae.

PETERSON, Justice.

The issue for decision is whether Minn. Stat. § 345.53 (1980), which authorizes the state treasurer to examine the records of any holder of unclaimed property, is preempted as to national banks by virtue of 12 U.S.C. § 484 (1976), which restricts visitorial powers over national banks. We hold that the power sought to be exercised by the treasurer is not the exercise of visitorial powers and is not preempted by the federal statute.

This is an action for declaratory and injunctive relief brought by Jim Lord, Treasurer of the State of Minnesota. He asserts authority under Minn.Stat. § 345.53 (1980) to examine the records of the First National Bank of St. Paul to determine if the bank has complied with the Minnesota Uniform Disposition of Unclaimed Property Act, Minn.Stat. §§ 345.31–.60 (1980). The bank's position is that the examination of national bank records is governed by 12 U.S.C. § 484 (1976), which, it is argued, permits examination only by the Comptroller of the Currency, a federal official with congressionally delegated powers. Agreeing with the bank's view of the preemptive effect of section 484, the district court granted the bank's motion for summary judgment and the treasurer now appeals.

The Minnesota Uniform Disposition of Unclaimed Property Act contains provisions regarding the disposition of property in the hands of "holders" that has remained unclaimed for a requisite number of years by its true owner. The act prescribes the circumstances under which property is presumed abandoned and requires holders of such property to report annually to the state treasurer. Minn.Stat. § 345.41 (1980). The treasurer then attempts to locate the owner by publishing notices. If these attempts are unsuccessful the property is to be delivered to the treasurer, who assumes custody and responsibility to subsequent claimants. Minn.Stat. §§ 345.42–.44 (1980).

Minn.Stat. § 345.53 (1980) confers enforcement authority upon the state treasurer, as follows:

The state treasurer may at reasonable times and upon reasonable notice examine the records of any person if he has reason to believe that such person has failed to report property that should have been reported pursuant to sections 345.31 to 345.60.

The bank has refused to allow the treasurer to proceed to examine its records,[1] claiming the treasurer's authority under Minn.Stat. § 345.53 is preempted by 12 U.S.C. § 484 (1976):

No bank shall be subject to any visitorial powers other than such as are authorized by law, or vested in the courts of justice or such as shall be or shall have been exercised or directed by Congress, or by either House thereof or by any committee of Congress or of either House duly authorized.

■ A determination of preemption, to the exclusion of concurrent jurisdiction over the same subject matter, invokes a threefold analysis: (1) whether compliance with both the federal and state provisions is a physical impossibility; (2) whether preemption is express and unequivocal in the language of the federal statute; and (3) whether congressional preemptive intent is implicit in the overall scheme of federal and state regulation. *Gryc v. Dayton-Hudson Corp.*, 297 N.W.2d 727, 735 (Minn.), *cert. denied*, 449 U.S. 921, 101 S.Ct. 320, 66 L.Ed.2d 149 (1980). As a preface to our preemption analysis, the history and purposes of the federal and state statutes in issue may be briefly stated.

■ The federal statute, 12 U.S.C. § 484 (1976), was originally enacted as part of the National Bank Act of 1864, ch. 106, 13 Stat.

---

1. In the present action, the bank admits that it is a "banking organization" and a "holder" as defined in the state act. The bank has duly filed unclaimed property reports as required by the act. Following receipt of these reports, however, the treasurer notified the bank of his intention to conduct an examination of the bank's records. Although the bank does not concede that the treasurer had "reason to believe" it has failed to report unclaimed property, that is not an issue on appeal.

99, and reenacted with modification in the Federal Reserve Act of 1913, ch. 6, 38 Stat. 251. Together with 12 U.S.C. § 481 (1976), the statute vests the Comptroller of the Currency with powers and duties for the administration of the national banking laws, the duty of supervising national banks, and the power to take possession of the assets of a national bank and to assume control of its operations. 7 *Michie on Banks and Banking* 22 (1980). The periodic examinations and reports required under the National Bank Act are "designed to insure prompt discovery of violations of the act and in that event prompt remedial action by the comptroller." *Id.* at 25, *Deitrick v. Greaney,* 309 U.S. 190, 195, 60 S.Ct. 480, 482, 84 L.Ed. 694 (1940).

The state statute, Minn.Stat. § 345.53 (1980), establishes a procedure by which the state treasurer can determine whether to implement the enforcement provisions of the Uniform Disposition of Unclaimed Property Act. *See* Minn.Stat. §§ 345.54–.55 (1980). The purposes of the act are: (1) to protect the interests of the owners of unclaimed property; (2) to relieve holders of the annoyance, expense, and liability of keeping such property; (3) to preclude multiple liability; and (4) to give the adopting state use of considerable sums of money which otherwise is windfall to holders. Annot., 98 A.L.R.2d 304, 309 (1964). The act is general in its application to all holders of unclaimed property but includes specific provisions directed toward property held respectively by banks, business associations, life insurance corporations, utilities, fiduciaries, and state courts, officers, and agencies. The state's interest in unclaimed property has been recognized as a power "as old as the common law itself." *Anderson National Bank v. Luckett,* 321 U.S. 233, 251, 64 S.Ct. 599, 609, 88 L.Ed. 692 (1944) (holding that the substantive provisions and reporting requirements of an unclaimed property law are valid as applied to national banks).

1. It is clear that compliance with both the federal and state provisions is not a physical impossibility, so there is no ground for preemption on that basis.

2. The dispositive issue in the court below was whether the limitation on visitorial powers constitutes an express preemption of the treasurer's examination. We hold that this is not a visitorial power and therefore reverse.

██ The idea of visitorial powers is derived from canon law and was, in the 18th century, applied to charitable corporations as part of the common law. *Continental-Midwest Corp. v. Hotel Sherman, Inc.,* 13 Ill.App.2d 188, 141 N.E.2d 400 (1957). In that context it was defined as the exclusive right of the founder of a corporation to make by-laws for the corporation and to adjudge disputes arising thereunder. *Id.* at 192, 141 N.E.2d at 402. The visitor's power to adjudicate disputes ended with the by-laws; controversies under the general law were matters for the public courts. *Id.* It is now accepted that the state is visitor of all corporations. 19 C.J.S. *Corporations* § 986 (1940).

The most frequently cited definition of visitation was enunciated in *First National Bank of Youngstown v. Hughes,* 6 F. 737, 740 (Ohio 1881): "Visitation, in law, is the act of a superior or superintending officer, who visits a corporation to examine into its manner of conducting business, and [to] enforce an observance of its laws and regulations. Burrill defines the word to mean 'inspection; superintendence; direction; regulation.'" The *Hughes* court ruled that an examination of national bank records by a county auditor, pursuant to state law, was not "visitation" where his purpose was to ascertain if there was money on deposit, subject to county taxation, that was not fully reported.

██ It is neither the fact of examination nor the extent of examination that determines whether a visitorial power is being exercised; rather, it is the purpose for which the examination is made that is determinative. *Id. See Guthrie v. Harkness,* 199 U.S. 148, 26 S.Ct. 4, 50 L.Ed. 130 (1905) (inspection of national bank records by shareholder to determine value of holdings and insure compliance with loan limitations

is not visitation); *Bank of America National Trust and Savings Ass'n v. Douglas*, 70 U.S.App.D.C. 221, 105 F.2d 100 (1939) (SEC inspections of bank records to investigate possible violations of the Securities Act of 1934 is not visitorial). In 19 C.J.S. *Corporations* § 986 (1940) "visitation of corporations" is defined as "the act of examining into corporate affairs; * * * and the purpose of visitation is to supervise, direct, and control the management of the corporation" (footnote omitted).

More recently, the case law was reviewed and interpreted as showing that "under § 484 any inquiry into the operation of a bank is not automatically a 'visitorial power' which is prohibited." *Peoples Bank of Danville v. Williams*, 449 F.Supp. 254, 259 (W.D.Va.1978). *Peoples Bank* involved bank examinations to enforce the antifraud provisions of the securities laws. The court isolated the issue as follows: "[P]laintiff's claim of visitation must stand or fall based upon an examination of what the SEC intends to do by its investigation into the formation of Peoples Bank of Danville." *Id.* The SEC investigations were held not to be visitorial because no effort was being made to control the bank. *Id.* at 260.

■ The only court to examine this question under identical facts concluded on the strength of *First National Bank of Youngstown v. Hughes*, 6 F. 737 (C.C.N.D.Ohio 1881) that examinations to enforce the Uniform Disposition of Unclaimed Property Act against national banks were not preempted. *Clovis National Bank v. Callaway*, 69 N.M. 119, 364 P.2d 748 (1961). If, as in *Hughes*, it is not illegal visitation to determine whether a bank has on deposit property which by virtue of the tax law creates a liability to the county, then it is analogically not impermissible visitation to determine whether a bank has on deposit property which by virtue of the unclaimed property law is deemed abandoned and should be turned over to the state.

The bank calls our attention to *National State Bank, Elizabeth, N. J. v. Long*, 630 F.2d 981 (3d Cir. 1980), in which the enforcement authority of a state official under a state antiredlining statute was held preempted by 12 U.S.C. § 484 (1976). We cannot agree with the *Long* court's discussion of visitorial powers and, to the extent that the decision was based on the circumstances of antiredlining legislation, we find *Long* distinguishable.

The bank also places emphasis on the regulations and informal opinions of the comptroller, interpreting his own authority to inspect national bank records as exclusive. These statements, being interpretive and not substantive, are not binding upon this court. *Chrysler Corp. v. Brown*, 441 U.S. 281, 315, 99 S.Ct. 1705, 1724, 60 L.Ed.2d 208 (1979); *First National Bank of Milaca v. Smith*, 445 F.Supp. 1117, 1120–21 (D.Minn.1977).

Having determined that the examination by the treasurer is not visitorial, we need not consider whether the examination would fall within the express exceptions in 12 U.S.C. § 484 (1976) for visitorial powers "authorized by law, or vested in the courts of justice."

■ 3. We further conclude there was no implied intent by Congress to bar the proposed examination by the state treasurer. No preemptive intent is inferred from either the federal statute or its legislative history. The nature of the subject matter regulated does not demand a uniformity made possible only through exclusive federal regulation. On the contrary, the Federal Reserve Act manifests an intent to place national banks on an equal, competitive basis with state banks and trust companies under the laws of the state in which the national bank is situated. *Boatmen's National Bank of St. Louis v. Hughes*, 385 Ill. 431, 53 N.E.2d 403 (1944). The bank has presented no persuasive evidence or arguments that preemption is implied by the pervasiveness of the federal regulatory scheme.

We must consider in greater detail the claim that the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. This inquiry has been alternatively

phrased, in the context of national banking laws, as whether the state law "frustrates the purpose for which national banks were created" or "impairs their efficiency to discharge the duties imposed upon them by federal law." *National State Bank, Elizabeth, N. J. v. Long,* 630 F.2d at 987.

The potential evils of the treasurer's examination would amount at most to an occasional inconvenience. The focus of the examination is on a small percentage of the bank's accounts. Although other records and documents will be scanned to locate the dormant accounts, we recognize that the banking industry employs sophisticated data processing technologies that will facilitate this search.

The bank raises a related objection that examination by a state official constitutes a "duplication of effort." This, without more, is not an adequate ground for preemption. *Peoples Bank of Danville v. Williams,* 449 F.Supp. at 259. *Cf. Bank of America National Trust and Savings Ass'n v. Douglas,* 70 U.S.App.D.C. at 227, 105 F.2d at 106 (suggesting that national banks should not be put in a class by themselves with regard to a particular law simply because enforcement of that law necessarily involves inspection of records already examined by the comptroller). It should be noted that the principal purposes of the comptroller's inspections are (1) to ascertain the financial condition and soundness of management of national banks, (2) to determine whether or not such banks are operating in conformity with the *banking laws,* and (3) to enable him to recommend amendments to existing law. *Id.* at 225, 105 F.2d at 104 (quoting 29 Op.Att'y Gen. 555, 560 (1912)). We have not been directed to a single instance in which the comptroller has detected and reported violations of state unclaimed property laws.[2] Nor is it the case that this is one of numerous state regulatory schemes requiring national banks to open their records to state examiners.

We find no support for the contention that confidentiality of bank records would be endangered by state inspection. Confidentiality of national bank records is not mandated by law. *Id.* While public confidence in national banks is enhanced by confidentiality, courts have in the past relied upon the assurances of investigators not to make reports public, *id.* at 226, 105 F.2d at 105, and have dismissed the fear of improper use of the knowledge obtained where nothing in the record suggested other than lawful purposes. *Guthrie v. Harkness,* 199 U.S. at 155, 26 S.Ct. at 6. And even if fears of lessened public confidence are assumed well-founded, it has been held that the private rights of a national bank must, in an analogous situation, yield to public necessities. *First National Bank of Youngstown v. Hughes,* 6 F. at 741.

The State of Minnesota has a proper interest in the enforcement of its laws, particularly in a field of traditional state interest. The cases have consistently held that, where state substantive law is valid as applied to national banks, the banks may be required to file reports with the state. *Anderson National Bank v. Luckett,* 321 U.S. at 252–53, 64 S.Ct. at 609 (reporting obligations are an "appropriate incident" to the state's authority over abandoned accounts); *Roth v. Delano,* 338 U.S. 226, 230, 70 S.Ct. 22, 24, 94 L.Ed. 13 (1949) (such reports are similar to reports to state taxation authorities and disclosure by national bank officials is "but a decent comity between governments").

We do not find the line which the bank attempts to draw between reporting requirements and state inspection to be compelling. As the New Mexico Supreme Court reasoned, "[w]ith the right to obtain the information there must be a means of enforcing valid demands." *Clovis National Bank v. Callaway,* 69 N.M. at 131, 364 P.2d at 756. *See also Bowles v. Shawano National Bank,* 151 F.2d 749, 751 (7th Cir. 1945), *cert. denied,* 327 U.S. 781, 66 S.Ct.

---

**2.** A state examiner has a stronger motivation to insure enforcement of state law than does a federal examiner faced with national concerns and a limited budget. *Cf. Jackson v. First National Bank of Valdosta,* 349 F.2d 71, 75 n.1 (5th Cir. 1965).

680, 90 L.Ed. 1008 (1946) ("[The Administrator of the Office of Price Administration] can not intelligently make charges without knowing facts to substantiate them. * * * How is the Administrator to unearth such violations or to confirm information given him by aggrieved persons or alert loyal citizens? By investigation and checking, of course.")

The better rule is that, while the state may not erect obstacles for a national bank in the discharge of the bank's duty, "the line which limits its duty must also limit its freedom from accountability to state authority." 7 *Michie on Banks and Banking* 13 (1980) (footnote omitted).

Our holding in this case does not leave the bank powerless against abuse of examination procedures. It is within the power of the district court to issue a protective order to prevent demonstrable undue interference or public disclosure that goes beyond the objectives of the unclaimed property law.

Reversed.

OTIS, J., took no part in the consideration or decision of this case.