[Civil No. 4485.  Filed December 21, 1942.]

[132 Pac. (2d) 637.]

THE STATE OF ARIZONA, Appellant, v. PHOE-
NIX SAVINGS BANK & TRUST CO., a Cor-
poration; FRANK HARDING and CHARLES
PATTEN, and if any of the Above-named In-
dividual Defendants are Deceased, Then the Un-
known Heirs of Such Deceased Defendant or De-
fendants, Appellees.

Mr. Joe Conway, Attorney General, and Mr. Edward P. Cline, Assistant Attorney General, for Appellant.

Messrs. Fennemore, Craig, Allen & Bledsoe, for Appellee Phoenix Savings Bank & Trust Co.

LOCKWOOD, C. J.—State of Arizona, plaintiff, brought suit against Phoenix Savings Bank & Trust Co., a corporation, called the bank, and Frank Harding and Charles Patten and the unknown heirs of Harding and Patten, defendants, to collect from the bank certain deposits made with the bank by the two named stockholders, and another deposit made with said bank by one Emma M. Lapham.

The bank answered, claiming that the statute under which the action was brought was unconstitutional, and judgment went in favor of it, whereupon this appeal was taken.

The action was brought under the provisions of section 51–517, Arizona Code 1939, as modified by chapter 39 of the Session Laws of 1941. The section,

together with its modifications, sections 51–517a to 51–517d, reads as follows:

"51–517. *Unclaimed deposits escheat after twenty years—Procedure.*—Money heretofore or hereafter deposited with a bank to the credit of depositors who have not made a deposit on said account or withdrawn a part thereof or the interest, and which has remained unclaimed for more than twenty (20) years after the date of such deposit, or withdrawal of any part of principal or interest, and where neither the depositor nor any claimant has filed any notice with such bank showing his present residence, shall, with the increase and proceeds thereof escheat to and vest in the state.

"51–517a. *Report of unclaimed deposits.*—Not later than June 30 of each year each bank shall make a report to the superintendent showing the status of all deposits in its possession described in section 51–517 (section 266, Revised Code of 1928). Any intentionally false report or wilful omission of any such deposit from the report shall subject the bank and its officers to the penalties prescribed in section 51–504 (section 254, Revised Code of 1928, as amended).

"51–517b. *Action by superintendent and attorney-general.*—The superintendent shall audit the report made pursuant to section 51–517a, and shall have power to examine the books and records of the bank for the purpose of verifying any item of the report, or, if no report is made, for the purpose of ascertaining if any unclaimed deposit exists. In the event he determines that any deposit, whether listed in the report or not, should escheat to the state, he shall demand payment thereof from the bank. Upon failure or refusal of the bank to make the payment, the superintendent shall notify the attorney-general, in writing, who shall institute an action against the bank for the collection of the deposit.

"51–517c. *Action by taxpayer.*—In the event the attorney-general for twenty (20) days after notice by the superintendent fails to institute an action for the collection of an escheat of an unclaimed bank deposit, any taxpayer may bring an action in his own name and at his own cost, with the same effect as if brought

by the attorney-general. The person instituting the action shall execute a bond with two (2) or more sureties, payable to the defendant, conditioned that if he fails to prosecute the action with diligence and to effect, the plaintiff will pay all damages sustained by the defendant by reason of the action and all costs incurred therein. If the taxpayer prevails in the action the court shall allow the taxpayer costs and a reasonable attorney's fee, not exceeding forty (40) per cent of the amount recovered.

"51–517d. *Payment to general fund.* — All unclaimed bank deposits which escheat to the state, including the amounts recovered pursuant to sections 51–517b and 51–517c, shall be paid to the state treasurer, through the state auditor, for deposit in the general fund."

It is the contention of the bank that these sections are unconstitutional in that they contravene both the due process and obligation of contract clauses of the state and federal constitutions. These clauses are so well known that we think it unnecessary to quote them.

We consider first whether section 51–517, *supra,* in and of itself is unconstitutional. By its terms money which has remained on deposit for more than twenty years, without any changes being made in the deposit either by increase or decrease, is escheated. Escheat originally means an interruption or obstruction of the ordinary course or descent of real property, in which case the property results back by a kind of reversion to the original grantor but it has now come to signify the passing of a decedent's estate into the general property of the state on his death intestate and without lawful heirs, and is applied indifferently to all rights of property. It is based on the theory that when the owner of property dies leaving no one authorized to take it either by will or descent, the state is the universal heir.

It will be seen that the law of escheat only comes into play when the owner of property has died

intestate and without heirs, and all valid escheat proceedings must necessarily establish (a) the fact of death, and (b) that there is no one qualified after such death to take the property. It frequently happens, however, that property is left apparently ownerless, with nothing to show that the owner has died, or, even though he has died, that he leaves no heirs. It is, therefore, universally held that there must be some judicial determination both of death and lack of heirs before the escheat can take place. This is recognized by our general statute of escheats, which sets up a complete method of securing such judicial determination by a proceeding in court, with proper service on all the interested parties. Art. 11, chap. 27, Arizona Code 1939. The principles of procedure set forth in this article are, in substance, those adopted by all states which have general escheat statutes. Many states, in addition to their general statutes, have adopted special statutes providing for the escheat of bank deposits which have been inactive for a certain length of time. But all of these special statutes, no matter what time of inactivity they provide, are necessarily based upon the same fundamental principle that the owner of the deposit has died intestate and leaving no heirs. The particular time set forth in the different statutes during which the deposit must have remained inactive is fundamentally a rule of evidence raising a presumption of death, and not a substantive law affecting the title to property. Were it otherwise, any law which arbitrarily deprived the owner of his property on account alone of the lapse of a certain period of time in which he had failed to assert his ownership, would unquestionably violate the state and federal constitutions as depriving him of his property without due process of law.

The question of the constitutionality of laws of this kind has been before the federal courts a num-

ber of times and their general principles upheld, but in each of such cases the statute involved permitted the state to escheat the deposit only when it provided for a judicial determination of the jurisdictional facts, which are (a) death, and (b) lack of heirs and intestacy, and gave proper opportunity for all persons interested in the deposit to appear and contest these two issues. The leading case on the subject probably is *Security Savings Bank* v. *State of California,* 263 U. S. 282, 44 Sup. Ct. 108, 68 L. Ed. 301, 31 A. L. R. 391, wherein the necessary elements of such a statute are discussed.

Applying the foregoing test to our statute above set forth, it is evident that not only does it fail to make any affirmative provisions for a judicial hearing, with notice to all interested parties, on the question as to whether the property is actually subject to escheat, but it expressly says that it is the duty of the bank to make payment of the deposit to the state whenever a demand is made therefor by the superintendent of banks. The action provided in section 51–517b, *supra,* is not based upon the asserted death of the owner of the deposit, intestate and without heirs, but upon the refusal of the bank to make the payment. That such a proceeding violates every principle of escheat, as well as the due process provisions of the state and federal constitutions, is too obvious for further discussion.

The state, however, relies upon our decision in *Matter of Hull Copper Company,* 46 Ariz. 270, 50 Pac. (2d) 560, 101 A. L. R. 664. In that case we held that all unclaimed shares and dividends of any corporation incorporated under the laws of Arizona passed to the state school fund substantially as an escheat under section 8 of Article 11 of the Constitution, which reads so far as material as follows:

*"(Permanent school fund.)*—A permanent state school fund for the use of the common schools shall

be derived . . . from all unclaimed shares and dividends of any corporation incorporated under the laws of Arizona; . . . ."

There was no provision, however, either constitutional or statutory, that a corporation must pay over these funds on demand without judicial determination of the jurisdictional facts, and the decision was expressly limited to corporations organized under the laws of Arizona. ·Further, it appears in that case that suit was brought in a proper court of equity to determine whether there were any persons entitled to claim the stock and shares; that all of the stockholders of the corporation who might have any interest therein were cited to appear and set up any claim which they might have to the property involved, and that service was made on them in the manner required by law, a situation very different than that appearing in the present case.

We are of the opinion that the decision in the case cited is clearly inapplicable to the situation involved in the present proceeding.

The judgment of the lower court is affirmed.

McALISTER and ROSS, JJ., concur.