364 P.2d 748

CLOVIS NATIONAL BANK, The Carlsbad National Bank, The Lovington National Bank, The First National Bank in Artesia, and All Other National Banks Within the State of New Mexico Similarly Situated, Plaintiffs-Appellants and Cross-Appellees,

v.

Joe CALLAWAY, Individually, and as State Treasurer of the State of New Mexico, Defendant-Appellee and Cross-Appellant.

No. 6825.

Supreme Court of New Mexico.

Aug. 30, 1961.

Seth, Montgomery, Federici & Andrews, Santa Fe, for appellants.

Hilton A. Dickson, Jr., Atty. Gen., Philip R. Ashby, Sp. Asst. Atty. Gen., for appellee.

MOISE, Justice.

Plaintiffs, being several national banks doing business in New Mexico, sought an injunction for themselves and all others similarly situated to prevent enforcement of Chap. 132, N.M.S.L.1959 (Secs. 22–22–1 to 22–22–29, N.M.S.A.1953, pocket supp.) alleging that the same is unconstitutional, and also that it attempts to authorize visitorial powers by a state official over a national bank in violation of the National Banking Act (Title 12, Sec. 484, U.S.C.A.).

The court below held that the act was constitutional except insofar as Sec. 22–22–13, subds. C and D, N.M.S.A.1953, pocket supp., there is no appeal. Accord-$25 from the notices otherwise required. and except as to Sec. 22–22–24, N.M.S.A.

1953, pocket supp., which was held to authorize an unconstitutional exercise of visitorial powers.

■ Insofar as the holding of the lower court with reference to the exception of items of less than $25 from the notice requirements of Sec. 22–22–13, N.M.S.A.1953, pocket supp., excluded items of less than ingly, we do not pass upon that question.

The act in question is generally the Uniform Disposition of Unclaimed Property Act as promulgated and approved by the National Conference of Commissioners on Uniform State Laws in 1955. However, as passed by our legislature, it does depart from the act as approved in a number of particulars to be hereinafter noted.

The principal attack on the law is addressed to Sec. 22–22–13, subds. C and D, and 22–22–20, subds. A and C(4), N.M.S.A. 1953, pocket supp., and accordingly the sections are set out in full:

Sec. 22–22–13

"A. Within one hundred and twenty (120) days from the filing of the report required by section 12 (22–22–12) the state treasurer shall cause notice to be published at least once each week for two (2) successive weeks in an English language newspaper of general circulation in the county in this state in which is located the last known address of any person to be named in the notice. If no address is

listed or if the address is outside this state, the notice shall be published in the county in which the holder of the abandoned property has his principal place of business within this state.

"B. The published notice shall be entitled 'Notice of Names of Persons Appearing to be Owners of Abandoned Property,' and shall contain:

"(1) The names in alphabetical order and last known addresses, if any, of persons listed in the report and entitled to notice within the county as hereinbefore specified.

"(2) A statement that information concerning the amount or description of the property and the name and address of the holder may be obtained by any persons possessing an interest in the property by addressing an inquiry to the state treasurer.

"(3) A statement that if proof of claim is not presented by the owner to the holder and if the owner's right to receive the property is not established to the holder's satisfaction within sixty-five (65) days from the date of the second published notice, the abandoned property will be placed not later than eighty-five (85) days after such publication date in the custody of the state treasurer to whom all further claims must thereafter be directed.

"C. The state treasurer is not required to publish in such notice any item of less than twenty-five ($25.00) dollars unless he deems such publication to be in the public interest.

"D. Within one hundred and twenty (120) days from the receipt of the report required by section 12 (22–22–12), the state treasurer shall mail a notice to each person having an address listed therein who appears to be entitled to property of the value of twenty-five dollars ($25.00) or more presumed abandoned under this act (22–22–1 to 22–22–29).

"E. The mailed notice shall contain:

"(1) A statement that, according to a report filed with the state treasurer, property is being held to which the addressee appears entitled.

"(2) The name and address of the person holding the property and any necessary information regarding changes of name and address of the holder.

"(3) A statement that, if satisfactory proof of claim is not presented by the owner to the holder by the date specified in the published notice, the property will be placed in the custody of the state treasurer to whom all further claims must be directed."

Sec. 22–22–20

"A. All funds received under the Uniform Disposition of Unclaimed Property Act (22–22–1 to 22–22–29), including the proceeds from the sale of abandoned property under section 18 (22–22–18), shall forthwith be deposited by the state treasurer in a separate fund to be known as the reserve investment fund. All funds deposited by the state treasurer in the reserve investment fund shall be under the control and disposition of the state investment officer subject to the supervision of the state investment council. The principal of the reserve investment fund may be invested by the state investment officer as are permanent funds of the state and as prescribed in Article 12, section 7, of the New Mexico state Constitution. The interest and income derived from the investment of the reserve investment fund shall at the end of each fiscal year be paid into the state general fund. It shall be the duty of the state treasurer to keep an indexed and accurate list indicating the time and amount of all funds paid into the reserve investment fund and the name of the last known owner or person having a legal interest in the funds. *After any separate sum has been collected from any holder and the amount collected paid into the reserve investment fund by the state treasurer and the amount deposited has resided in the reserve investment fund for a period of forty (40) years without the owner asserting a claim and collecting upon his claim, then the amount of the original deposit shall escheat to the state and be credited to the current school fund of the state.* (Emphasis supplied.)

"B. The state treasurer before making the deposit of any funds into the reserve investment fund shall record the name and last known address of each person appearing from the holders' reports to be entitled to the abandoned property and the name and last known address of each insured person or annuitant, and with respect to each policy or contract listed in the report of a life insurance corporation, its number, the name of the corporation, and the amount due. The record shall be available for public inspection at all reasonable business hours.

"C. Before making any deposit to the credit of the reserve investment fund, the state treasurer may deduct:

"(1) Any costs in connection with the sale of abandoned property;

"(2) Any costs of mailing and publication in connection with any abandoned property.

"(3) Reasonable service charges; and

"(4) An amount equaling fifteen per cent (15%) of the amount collected to be placed in a suspense fund under the control of the state treasurer for the repayment of approved claims as provided in the following two (2) sections of the Uniform Disposition of Unclaimed Property Act (22–22–21, 22–22–22)."

22–22–24. "The state treasurer may at reasonable times and upon reasonable notice examine the records of any person if he has reason to believe that such person has failed to report property that should have been reported pursuant to the Uniform Disposition of Unclaimed Property Act (22–22–1 to 22–22–29)."

The italicized portion of 22–22–20, subd. A, does not appear in the uniform act and was added by our legislature. Unquestionably, whereas, the uniform act is custodial in nature (9A, Uniform Laws, Annotated, 251), the addition noted incorporates in the act the element of escheat.

■■ Plaintiffs first point out that Sec. 22–22–20, N.M.S.A.1953, pocket supp., provides that 15% of the amount collected shall be deducted by the state treasurer before the balance is deposited in a fund known as the reserve investment fund, and that this 15% shall be retained in a suspense fund and be used for the repayment of claims. It is asserted that inasmuch as there is no provision for recourse to the 85% in the reserve investment fund to pay approved claims this amounts to an immediate escheat of this amount and is accordingly illegal. With this we do not agree. First, until it becomes apparent that a 15% suspense fund will not be adequate for the purposes intended, we are not prepared to say that the legislative determination of an amount to be withheld from investment so as to be available to pay claims is not proper. Second, since we hereinafter conclude that the law can be upheld as a custodial enactment only, we do not perceive why transfer from the reserve investment fund to the suspense fund might not be accomplished within the terms of the act, if the suspense fund should in fact be depleted. Third, we do not consider plaintiffs to be proper parties to raise the question. It is clear from the provisions of Sec. 22–22–15, N.M.S.A. 1953, pocket supp., that upon compliance with the act, plaintiffs are relieved of liability. So long as this is true and plaintiffs are in fact protected from claims, we do not perceive that they have any valid basis for complaint. Anderson National Bank v. Luckett, 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 192, 151 A.L.R. 824.

Plaintiffs also make reference to the fact that § 22–22–15, N.M.S.A.1953, pocket supp., only protects them to the extent of the "value" of the property so paid over and delivered. It seems to us that this protection afforded is as broad as it need

be. If the banks have acted improperly or have become liable over and beyond the value of the property, it should be their responsibility, and as far as any property which might be lost through surrender of the same to the state is concerned, it would be our view that protection for the "value" of the property is all that they can demand or expect. Standard Oil Co. v. State of New Jersey, 341 U.S. 428, 71 S.Ct. 822, 95 L.Ed. 1078.

Plaintiffs' principal point raises the question of the sufficiency of the notice to meet the requirements of due process. The statute requires every person excepting life insurance corporations holding funds or property presumed abandoned under the act, to report such fact to the state treasurer on or before November 1 of each year, such report to cover the period ending June 30 preceding. Provision is made for the holder of such property presumed abandoned to notify the owner before making the report if the owner's whereabouts is known to the holder, and due diligence shall be exercised to verify the owner's whereabouts. (Sec. 22–22–12, N.M.S.A.1953, pocket supp.)

Within 120 days from the filing of the report the state treasurer is required to publish a notice of the names of people appearing on these lists. (Sec. 22–22–13, subd. A, N.M.S.A.1953, pocket supp.) This notice must be published twice either in the county in which was located the last known address of any person named therein, or if no address is listed, then in the county where the holder of the property has its principal place of business in this state. The notice, in addition to the names in alphabetical order and last known addresses, is required to include a statement that "information concerning the amount or description of the property and the name and address of the holder may be obtained by any persons possessing an interest in the property" by inquiring of the state treasurer, and further that proof of claim must be presented and the owner's right to the property established within 65 days of the second publication; otherwise, thereafter not later than 85 days from the second publication, the property will be placed with the state treasurer, to whom all claims must then be addressed (Sec. 22–22–13, subd. B, N.M.S.A.1953, pocket supp.). In addition, within 120 days after receipt of the list, the state treasurer is required to mail a notice to each person having an address listed, advising that if proof of claim is not timely made the property will be transferred to his custody. (Sec. 22–22–13, subds. D, E, N.M.S.A.1953 Comp., pocket supp.)

Within 20 days after the time for claiming property has expired, the holder is required to deliver to the state treasurer all abandoned property shown in the report. If the owner establishes his right to the property to the satisfaction of the holder,

or if for any reason it develops that the presumption of abandonment was erroneous, the property need not be delivered. (Sec. 22–22–14, N.M.S.A.1953, pocket supp.)

No mention has been made of the fact that no notice is required to be published concerning items of less than $25, and neither is the state treasurer required to give any notice where the property is less than $25. (Sec. 22–22–13, subds. C, D, N.M.S.A.1953, pocket supp.) As already stated this was held invalid by the trial court, and no question having been raised on appeal concerning correctness of the ruling, the same stands, and we express no opinion thereon.

Appellants assert that the act is unconstitutional because the notice provided for in the act is insufficient to meet the requirements of due process.

Both parties cite and quote extensively from the case of Anderson National Bank v. Luckett, supra. There can be no question that this case provides the answer to many of the arguments here advanced. It lays to rest any question as to whether or not a state can compel surrender to it of deposit balances which have been abandoned or forgotten. It points out that in doing so constitutional requirements must be met and there must be no violation of national banking laws. It is of principal interest to us because of what was said concerning the requirements of notice. Accordingly, we quote the following:

"Since the bank is a debtor to its depositors, it can interpose no due process or contract clause objection to payment of the claimed deposits to the state, if the state is lawfully entitled to demand payment, for in that case payment of the debt to the state, under the statute, relieves the bank of its liability to the depositors. Security Sav. Bank v. California, supra, 263 U.S. 285, 286, 68 L.Ed. 301, 44 S.Ct. [108] at pages 109, 110, 31 A.L.R. 391. But if the statute is deficient in its provisions for notice and opportunity for hearing so that the depositors would not be bound by any proceedings taken under it, the bank would be entitled to raise the question whether its obligation to the depositors would be discharged by payment of the deposits to the state. Hence our inquiry must be directed to the question whether the procedure by which the state undertakes to acquire the depositors' right to demand payment of the deposits was upon adequate notice to them and opportunity for them to be heard.

"As we have said, the statute provides for notice to the depositors by requiring the sheriff to post on the courthouse door or bulletin board a copy of the bank's report of deposits presumed abandoned. We think that this, in con-

junction with the notice provided by the statute itself and by the taking of possession of the bank balances by the state, is sufficient notice to the depositors to satisfy all requirements of due process.

"The statute itself is notice to all depositors of banks within the state, of the conditions on which the balances of inactive accounts will be deemed presumptively abandoned, and their surrender to the state compelled. All persons having property located within a state and subject to its dominion must take note of its statutes, affecting the control or disposition of such property and of the procedure which they set up for those purposes. Reetz v. People of State of Michigan, 188 U.S. 505, 509, 23 S.Ct. 390, 392, 47 L.Ed. 563; North Laramie Land Co. v. Hoffman, 268 U.S. 276, 283, 45 S.Ct. 491, 494, 69 L.Ed. 953, 957. Proceedings for the assessment of taxes, the condemnation of land, the establishment of highways and public improvements affecting landowners, are familiar examples. Huling v. Kaw Valley R. & Improv. Co., 130 U.S. 559, 563, 564, 9 S.Ct. 603, 605, 606, 32 L.Ed. 1045; Ballard v. Hunter, 204 U.S. 241, 254–257, 262, 27 S.Ct. 261, 264–267, 269, 51 L.Ed. 461.

"The report of the bank, required to be posted on the courthouse door or bulletin board, lists the abandoned accounts as defined by the statute and thus gives notice to the owners of all those accounts which, because of their inactivity for the periods and in the ways specified by the statute, are deemed abandoned and required to be paid to the state. This notice, when read in the light of the knowledge of the statute, with which all persons having such bank accounts within the state are chargeable, is sufficient to advise that the listed accounts are deemed presumptively abandoned and will at the end of six weeks from the date of filing be paid over to the state, and that both before and after that event the depositors will be afforded opportunity to present their claims and to have them judicially determined, if rejected. * * *" [321 U.S. 233, 64 S.Ct. 604.]

■ The notice required by our statute is to our minds a considerably surer method of informing interested parties than the one being considered in Anderson National Bank v. Luckett, supra, and applying the tests which were announced in that case, we have no hesitancy in holding our statute adequate to support the transfer of custody from the banks to the state treasurer.

However, when we come to consider the question in connection with the escheat provided in the last sentence of Sec. 22–22–20, subd. A, N.M.S.A.1953, pocket supp., quoted

supra, we have an entirely different situation. It is quite evident that the sentence was added into the section as an afterthought. Furthermore, the escheat occurs without further notice or opportunity to be heard beyond that provided at the time custody of the property is changed. It is also worthy of note that none of the notices provided for in the statute advise that escheat may follow at any time in the future. Appellee questions the right of appellants to raise this issue. However, he cites no authority to support his position, and we fail to distinguish any difference in the situation where the act provides for change of custody and eventual escheat, with notice only required of the custodial change and the situation present in Anderson National Bank v. Luckett, supra. We think the rule applied there is equally applicable in connection with this phase of the instant case.

██ The provision for escheat after the passage of 40 years added into Sec. 22–22–20, N.M.S.A.1953, pocket supp., is nothing more nor less than a means of depriving the owners of the property because of the passage of time without a claim thereto being asserted. There is no requirement that the true owner shall have died without known heirs, nor is any means provided for judicially making such a determination after notice and opportunity to be heard by interested persons. Omission of such steps as preliminary to the escheating of the property is to our minds absolutely fatal to the validity of the provision. State v. Otis Elevator Company, 12 N.J. 1, 95 A.2d 715; State v. Phoenix Savings Bank & Trust Co., 60 Ariz. 138, 132 P.2d 637; In re Twenty-One Slot Machines, 72 Ariz. 408, 236 P.2d 733. Compare, Schmitz v. New Mexico State Tax Commission, 55 N.M. 320, 232 P.2d 986, in which we held that where an owner of real estate died intestate and without heirs, title passed immediately and automatically to the state.

██ In this connection we would mention the fact that although we use the term "escheat" when referring to both real estate and personal property, historically and at common law "escheat" referred to real estate which reverted to the crown, whereas "bona vacantia" was the term used in referring to personal property without an owner. Black's Law Dictionary, 3rd Ed.; State v. Phillips Petroleum Co., 212 Ark. 530, 206 S.W.2d 771. Also, the decision in Schmitz v. New Mexico State Tax Commission, supra, accords with the provisions of Sec. 31–7–2, N.M.S.A.1953, to the effect that real estate of a decedent passes directly to the heirs or devisees and does not pass to the executor or administrator. Dunham v. Stitzberg, 53 N.M. 81, 201 P.2d 1000. With personal property the rule is otherwise, and before title passes there must be due administration followed by a determination of heirship and an order of distribu-

tion. Parker v. Beasley, 40 N.M. 68, 54 P.2d 687; York v. American Nat. Bank of Silver City, 40 N.M. 123, 55 P.2d 737.

That there must be reasonable notice and opportunity to be heard before ownership can be transferred to the state and the requirements of due process satisfied we do not think can be successfully controverted. State v. Security Sav. Bank, 186 Cal. 419, 199 P. 791, affirmed on writ of error in Security Sav. Bank v. People of State of California, 263 U.S. 282, 44 S.Ct. 108, 68 L.Ed. 301, 31 A.L.R. 391.

On the two occasions that this court has had to pass on the question of whether or not notice and an opportunity to be heard were requisites of due process without which persons could not be constitutionally deprived of their property, we have held in accord with these decisions. We refer to Lacey v. Lemmons, 22 N.M. 54, 159 P. 949, L.R.A.1917A, 1185, where sale of personal property was involved, and Janes v. West Puerto de Luna Community Ditch, 23 N.M. 495, 169 P. 309, a case involving condemnation of real property.

In the instant case there is a total absence of any provisions for notice of the escheat, and no opportunity whatsoever to appear and oppose the same. It must follow that the provision objected to must be ruled invalid.

It does not necessarily follow from this conclusion that the entire act must fail.

Our attention is directed to Sec. 29, Ch. 132, N.M.S.L.1959, which has been placed by the annotator of our compilation in the note following Sec. 22–22–28, N.M.S.A. 1953, pocket supp., and which reads as follows:

"If any provision of this act or the application thereof to any person or circumstances is held invalid, the invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to this end the provisions of this act are severable."

We have heretofore announced the rule to be that the invalidity of a portion of a legislative enactment does not operate to invalidate those portions of the act which are free from objection unless there is such interdependence of all provisions so as to make it reasonably certain that absent the part determined to be invalid, the legislature would not have enacted the valid portion. In re Gibson, 35 N.M. 550, 4 P.2d 643. Where, as here, a section similar to Sec. 29, quoted above, has been incorporated expressly stating the legislative intent that the valid portion of the enactment should stand even though other parts may be determined to be invalid, there can be no question of legislative intent and if possible the portion of the legislation free from objection should be given effect. Asp-

lund v. Alarid, 29 N.M. 129, 219 P. 786. We accordingly conclude that although the last sentence of Sec. 22–22–20, subd. A, N.M. S.A.1953, pocket supp., is invalid, the balance of the section not being objectionable should be upheld.

In the light of our determination of the issue hereinabove discussed, it is not necessary for us to consider appellant's third point which is predicated upon an argument that the act is one providing for escheat and cannot be applied to national banks under the doctrine announced in First National Bank of San Jose v. State of California, 262 U.S. 366, 43 S.Ct. 602, 67 L.Ed. 1030. As already stated this case is controlled by Anderson National Bank v. Luckett, supra, and in the view we take of the act it is clear that there is no unlawful infringement on the national banking laws nor undue burden placed on the performance of the bank's duties.

A cross appeal has been perfected by the defendant which requires that we consider if the lower court was correct in its conclusion that Sec. 24, Ch. 132, N.M.S.L.1959, (Sec. 22–22–24, N.M.S.A.1953, pocket supp.) was unconstitutional as applied to national banks.

The section in question reads as follows:

"The state treasurer may at reasonable times and upon reasonable notice examine the records of any person if he has reason to believe that such person has failed to report property that should have been reported pursuant to the Uniform Disposition of Unclaimed Property Act (22–22–1 to 22–22–29)."

The trial court was of the opinion that this section could not be applied to national banks because of the provisions of 12 U.S.C.A. § 484, which reads:

"No bank shall be subject to any visitorial powers other than such as are authorized by law, or vested in the courts of justice or such as shall be or shall have been exercised or directed by Congress, or by either House thereof or by any committee of Congress or of either House duly authorized. R.S. Sec. 5240; Feb. 19, 1875, c. 89, 18 Stat. 329; Dec. 23, 1913, c. 6, Sec. 21, 38 Stat. 271."

■ In this conclusion we think it was in error. As early as 1881, in the case of First National Bank of Youngstown v. Hughes, C.C., 6 F. 737, 740, it was determined that there was no illegal visitation involved where an Ohio county auditor, in strict accordance with the state statutes, ordered the cashier of a national bank to appear and give testimony and have with him the bank's books of account showing names of depositors, and amounts deposited by each as of certain dates, and upon refusal sought court process to force compliance. The purpose of the auditor was to ascertain if

there was any money on deposit in the bank subject to taxation in the county and which had not been returned for taxes. The court discussed "visitation" and "visitorial powers" in the following language:

"But do the defendants, or either of them, propose the exercise of visitorial authority? We think not. Visitation, in law, is the act of a superior or superintending officer, who visits a corporation to examine into its manner of conducting business, and enforce an observance of its laws and regulations. Burrill defines the word to mean 'inspection; superintendence; direction; regulation.' The exercise of no such authority is contemplated by defendants. They do not contemplate inspection, supervision, or regulation of complainant's business, or an enforcement of its laws or regulations. On the contrary, their purpose is to ascertain, in a legal way, and by legitimate testimony, whether any person had, at the time mentioned, on deposit with complainant any money subject to taxation in said county which had not been returned by the owners thereof for that purpose. Hence, the subpoena commanding the production of the complainant's books, in the manner and for the purpose stated, is not an exercise of 'visitorial powers;' and it follows that the witness is not protected by said section from amenability to the pro-

bate court for his contempt in disobeying its mandate."

The correctness of the court's ruling was recognized in Guthrie v. Harkness, 199 U.S. 148, 26 S.Ct. 4, 50 L.Ed. 130, 4 Ann. Cas. 433. See also Bank of America Nat. Trust & Savings Ass'n v. Douglas, 70 App. D.C. 221, 105 F.2d 100, 123 A.L.R. 1266; National Bank v. Commonwealth of Ky., 9 Wall. 353, 19 L.Ed. 701. In State v. First Nat. Bank of Portland, 61 Or. 551, 123 P. 712, 716, Ann.Cas.1914B, 153, the principles are analyzed and a conclusion reached that national banks are not exempted from compliance with state legislation which does not impair "their efficiency to perform the functions which they [are] designed to serve" and an escheat statute there under consideration was held not to do so. Although we do not perceive that the Oregon statute had a provision like Sec. 22–22–24, N.M.S.A.1953, pocket supp., it did contain provisions whereby compliance by banks could be assured. With the right to obtain the information there must be a means of enforcing valid demands, and under the authorities we are clear that so long as the same are reasonable and do not interfere with the purpose of the bank's creation, or impair or destroy its functioning and are not in conflict with some paramount federal law, there is no valid objection that can be voiced to the provision. Lewis v. Fidelity & Deposit Company of Maryland, 54 S.Ct. 848, 292 U.S. 559, 78 L.Ed. 1425; National

Bank v. Commonwealth of Ky., supra; State v. First National Bank of Portland, supra; First National Bank of Youngstown v. Hughes, supra. Roth v. Delano, 338 U.S. 226, 70 S.Ct. 22, 94 L.Ed. 13.

The cause is remanded with instructions to vacate the judgment appealed from and enter a new one conforming herewith.

It is so ordered.

COMPTON, C. J., and CARMODY, CHAVEZ and NOBLE, JJ., concur.