432 P.2d 109

**KENNECOTT COPPER CORPORATION, CHINO MINES DIVISION, Petitioner-Appellee,**

v.

**EMPLOYMENT SECURITY COMMISSION of New Mexico, Respondent-Appellant,**

**All Claimants Listed in Commission Exhibit I in Cause No. 508–LD–COM before the Employment Security Commission of New Mexico, Respondent-Claimants-Appellants.**

**No. 8089.**

Supreme Court of New Mexico.

July 31, 1967.

Rehearing Denied Oct. 9, 1967.

Boston E. Witt, Atty. Gen., A. M. Frazier, Sp. Asst. Atty. Gen., for Employment Security Commission, for respondent-appellant.

Foy & Sprecher, Silver City, for certain claimants-appellants.

White, Gilbert, Koch & Kelly, Santa Fe, for certain claimants-appellants.

Shantz & Dickson, Silver City, for appellee.

## OPINION

SPIESS, Judge, Court of Appeals.

Appellants, some 370 employees of Kennecott Copper Corporation, hereinafter referred to as Kennecott, filed and prosecuted claims for unemployment benefits before the Employment Security Commission of New Mexico, herein referred to as the Commission.

Appellants' claims for unemployment benefits arise out of a strike situation in Grant County by the International Union of Mine, Mill and Smelter Workers, hereinafter called Mine-Mill, against Kennecott. The strike by Mine-Mill appears to have had its beginning in failure to negotiate satisfactory contracts between Kennecott and its employees' unions before the old contracts expired on June 30, 1964. On July 9, 1964, Mine-Mill struck the Kennecott operations in New Mexico and three other western states following a strike by the United Steel Workers in Utah. Mine-Mill posted pickets at all entrances to the company properties.

Claimants were employees of Kennecott but were not members of nor represented by Mine-Mill, which was the dominant union at Kennecott. Nevertheless, beginning July 9, 1964, and until the strike was terminated on August 14, 1964, claimants did not attempt to cross the Mine-Mill picket lines or enter the company's properties to report to their jobs. Throughout the strike period work was available to all of the appellants and they were so informed by radio announcements, newspaper notices and letters mailed by the company to each of the employees.

Appellants' claims were assigned by the Commission to a deputy for the purpose of conducting a hearing and to make and transmit to the Commission findings of fact. All interested parties and their counsel were present and participated in the hearing before the deputy.

Kennecott opposed payment of the claims on the ground that appellants were ineligible to receive benefit payments under § 59-9-5(d), N.M.S.A., 1953. This section denies benefits to an individual during any period respecting which the Commission finds that the unemployment for which claim is made is due to work stoppage resulting from a labor dispute at the place of employment.

In accordance with the Act benefits are not denied to one who neither participates in nor is directly interested in the labor dispute, or to one not belonging to the grade or class of workers participating in or directly interested in the labor dispute.

Following the hearing the deputy transmitted findings of fact to the Commission and on or about August 13, 1964, a decision was rendered holding appellants' claims to be valid and payable. To avoid confusion we will refer to this decision as the "first decision". On the date the decision was rendered all interested parties, including Kennecott, were formally notified of the decision and reasons therefor. No appeal was taken from the first decision to the district court but on the 15th of August, 1964, Kennecott gave notice of appeal from the first decision to the Commission itself. On March 10, 1965, the Commission rendered a further decision affirming the validity of the claims. From this decision Kenne-

cott appealed to the district court and following a hearing to the court the Commission's decision was reversed and appellants' claims held to be invalid. From the decision of the district court appellants and the Commission have appealed.

The appellants contend that since an appeal to the district court was not taken within fifteen days after notification of the first decision it became final and neither the Commission nor the district court had jurisdiction to further consider or decide the validity of the claims.

The question presented requires an interpretation of the procedural provision of the unemployment compensation act.

The Commission is composed of three (3) members, § 59-9-10, N.M.S.A., 1953. Claims are made for unemployment benefits in accordance with regulations prescribed by the Commission, § 59-9-6(a), N.M.S.A., 1953. Under § 59-9-6(b) the Commission has power to appoint a deputy or deputies to examine claims and upon facts found determine the validity of such claims. If the claims are found to be valid then the deputy determines the time of commencement of weekly benefits, the amount and maximum duration thereof, or he may refer the claim or any questions involved therein to an appeal tribunal or to the Commission for a determination.

An exception is contained in the article as to the procedure applicable in a situation where payment or the denial thereof will be determined under the provisions of 59-9-5(d), supra, the labor dispute provision to which we have referred. Where such issue is presented the deputy is required to submit his findings of fact to the Commission and upon the evidence submitted, and such additional evidence as it may require, the Commission shall affirm, modify or set aside the findings and render a decision upon the issue.

Under § 59-9-6(h) "Any decision of the commission in the absence of an appeal therefrom as herein provided shall become final fifteen (15) days after notification or mailing thereof * * *".

The decision of the Commission upon any disputed matter decided by it may be reviewed both upon the law and the facts by the district court. § 59-9-6(i).

Kennecott argues that the first decision is a deputy's decision as distinguished from a Commission decision and consequently an appeal at this point to the district court is not maintainable.

In view of the language of § 59-9-6(b) as it relates to the determination of the right to payment of benefits under § 59-9-5(d) (labor dispute section) we are of the opinion that the first decision was a Commission decision as distinguished from one made by the deputy. The deputy is required to submit his findings to the Commission and the Commission on the basis of evidence submitted and additional evidence if required may affirm, modify or set aside the findings and transmit a decision to the deputy. To our mind there is no basis for interpreting this section of the act to mean that the decision is that of the deputy. The statute is explicit that the power of decision, in the circumstances involved, is in the Commission and that the deputy's function is limited to making and submitting his findings to it.

Kennecott further contends that the first decision was an intermediate step in the required or allowed procedure at the administrative level; that further proceedings before the Commission would be required to exhaust administrative remedies. The appeal taken by Kennecott and entertained by the Commission from the first decision we feel more closely resembles a proceeding for reconsideration of the first decision. An appeal usually pre-supposes a decision by a lower authority. It is difficult to conceive of an appeal from a decision of the highest administrative authority to itself.

There is no express language in the act which requires the Commission in a § 59-9-5(d) labor dispute to make a further determination or conduct a further hearing after it has received the deputy's findings and made its decision.

■ If further proceedings before the Commission by appeal or reconsideration are allowed or authorized the right to entertain such action by the Commission must exist by implication. It is a fundamental rule of construction that when a power is conferred by statute everything necessary to carry out the power and make it effective and complete will be implied. Reese v. Dempsey, 48 N.M. 417, 152 P.2d 157 (1944); State ex rel. Clancy v. Hall, 23 N.M. 422, 168 P. 715.

■ It likewise follows that a power not expressly granted is implied only where it is necessary to carry into effect powers expressly granted. Commonwealth ex rel. Cartwright v. Cartwright, 350 Pa. 638, 40 A.2d 30, 33, 155 A.L.R. 1088 (1944); Lawrence Const. Corp. v. State, 293 N.Y. 634, 59 N.E.2d 630 (1944); People ex rel. City of Olean v. Western N. Y. and Pa. Traction Co., 214 N.Y. 526, 108 N.E. 847 (1915).

■ The express power granted the Commission by the legislature which is relevant to this appeal, is quasi-judicial in its nature and authorizes the Commission to decide issues submitted under the labor dispute section, § 59–9–5(d). The right of the Commission to investigate facts and law deemed by it to be material to a decision is unlimited. After the Commission has rendered its decision it has exercised the express power conferred by the act upon it. No logical reason appears to us for holding that a right of reconsideration is necessary in carrying out the express power. We further note here that judicial review is authorized as to any decision of the Commission.

Our research has revealed a lack of uniformity of judicial opinion upon the question whether an administrative agency in the absence of specific authority has implied power to reconsider its final decision. A number of the authorities supporting different views are collected in the annotation 73 A.L.R.2d 939.

■ It is relevant to consider the difference in procedural steps authorized in a labor dispute case from those permitted in other types of situations. Where a labor dispute issue is involved intermediate appellate proceedings within the administrative process as authorized by § 59–9–6(c), (d) are eliminated and a decision is rendered by the Commission itself subject only, however, to judicial review. In our opinion the legislature intended that in a labor dispute the procedural steps should be reduced to a minimum in order to obtain a prompt ultimate decision. This affords some evidence of legislative intent not to confer authority upon the Commission to reconsider its decision which would increase the number of available procedural steps and create rather than avoid delay.

■ Kennecott further argues that an appeal in this instance from the first decision to the district court would have been an impossibility for the reason that the proceedings before the deputy were not transcribed due to mechanical difficulties. In support of this contention we are referred to the following statement made by counsel for the Commission at the outset of the appeal or reconsideration proceedings entertained by the Commission. Counsel identified and introduced certain exhibits and as to a particular exhibit which appears to have been withdrawn he said:

"It is an attempt to transcribe the proceedings at the hearing before the Deputy. Because of mechanical difficulties, the transcription was not of the quality to be placed in this record, insofar as the Commission's interests are concerned."

This statement, to our mind, would not justify a conclusion that the record was incomplete or illegible or that it would not have been sufficient for appeal. We are not called upon to determine what procedure would have been available to Kennecott had no record or an insufficient record been made at the deputy's hearing.

■ It is our opinion that the first decision became final no appeal having been taken from it to the district court consequently neither the Commission nor

the district court had jurisdiction to further consider appellants' claims.

The judgment is reversed and the cause remanded to the district court with instructions to vacate the judgment and dismiss the proceedings.

It is so ordered.

CHAVEZ, C. J., and COMPTON, J., concur.

MOISE and CARMODY, Justices (dissenting):

In connection with the determination of whether a timely appeal was taken, we disagree with the conclusion reached by the majority. Involved is an interpretation of § 59–9–6(b), N.M.S.A.1953, and, in particular, that part which is italicized below:

"(a) * * *

"(b) Initial Determination. A representative designated by the commission, and hereinafter referred to as a deputy, shall promptly examine the claim and, on the basis of the facts found by him, shall either determine whether or not such claim is valid, and if valid, the week with respect to which benefits shall commence, the weekly benefit amount payable and the maximum duration thereof, or shall refer such claim or any question involved therein to an appeal tribunal or to the commission, which shall make its determinations with respect thereto in accordance with the procedure described in subsection (c) of this section, except that *in any case in which the payment or denial of benefits will be determined by the provisions of section 5(d) (sec. 57–805(d) [59–9–5(b)]) of this act, the deputy shall promptly transmit his full finding of fact with respect to that subsection to the commission, which, on the basis of the evidence submitted and such additional evidence as it may require, shall affirm, modify, or set aside such findings of fact and transmit to the deputy a decision upon the issues involved under that subsection.* The deputy shall promptly notify the claimant and any other interested party of the decision and the reasons therefor. Unless the claimant or any such interested party, within fifteen (15) calendar days after the date of notification or mailing of such decision, files an appeal from such decision, such decision shall be final and benefits shall be paid or denied in accordance therewith. If an appeal is duly filed, benefits with respect to the period prior to the final determination of the commission, shall be paid only after such determination: Provided, That if an appeal tribunal affirms a decision of a deputy, or the commission affirms a decision of an appeal tribunal, allowing benefits, such benefits shall be paid regardless of any appeal which may thereafter be taken, but if such decision is finally reversed, no employer's account shall be charged with benefits so paid."

The language of the section leaves much to be desired. However, the only issue necessary to be resolved in this case is as to the nature of the notification by the deputy of the determination of the issues which arose when problems incident to § 59–9–5(d), supra, were first presented and ruled on by the commission. Section 59–9–6(b), quoted above, provides for an initial determination from which an appeal to an appeal tribunal must be taken within fifteen days. Was the commission's action thereon a commission decision from which an appeal to the courts is provided in § 59–9–6(h), supra? We do not agree with the majority that an appeal to the courts is required from the decision in this case. Nothing was involved except a transmittal by the deputy to the commission of his findings of fact concerning possible disqualifications under § 59–9–5(d), which findings of fact were in turn ruled on by the commission, and the decision reached transmitted to the deputy who then notified the claimants and other interested parties of the decision and the reasons therefor, as provided in § 59–9–6(b). That this decision is not the decision of the commission required to be appealed to the courts within

fifteen days under § 59–9–6(h), supra, seems to us to be clear for a number of reasons.

First, the subsection heading describes the proceedings as the "Initial Determination." Ordinarily, appeals are not taken piecemeal, or until all administrative procedures are exhausted. To so interpret this section, in our view, would result in a manifestly time-consuming and wasteful procedure. We cannot believe that the legislature intended such an outcome.

Second, no hearing where the interested parties may be heard is required for the initial determination. The section provides only that the deputy transmit his findings concerning rights to benefits under § 59–9–5(d), and the commission, "on the basis of the evidence submitted and such additional evidence as it may require" shall then act. While admittedly the commission could hold a hearing where the parties could be present and allowed to submit evidence and arguments, none is provided for or required. To our minds, to interpret the section to make the decision under the facts here a final decision from which an appeal to the courts is required for a review, raises serious questions of constitutionality because there would be a total absence of due process in such a procedure. Compare Clovis National Bank v. Callaway, 69 N.M. 119, 364 P.2d 748 (1961). That a hearing could be had does not alter the fact that none is required. As said in State ex rel. Holmes v. Board of Finance, 69 N. M. 430, 367 P.2d 925 (1961), "It is not what has been done but what can be done under a statute that determines its constitutionality."

Third, reason and common sense tell us that it was never intended that a decision by the commission concerning the payment or denial of benefits as affected by § 59–9–5(d) should be the full basis for a final appealable decision. This is particularly true where the only hearing was one before the deputy on this limited portion of possible issues that might have been presented, and no record of the hearing is available.

Fourth, the history of the provision supports our conclusion. The section is unchanged in any material respect from the form in which it was adopted in 1936 (ch. 1, § 6, N.M.S.L.1936). An examination of the laws of Arizona (ch. 13, § 6, Ariz. S.L.1936) and of Colorado (ch. 1, § 6, Colo. 3rd Ex.Sess.1936) discloses that in 1936 unemployment compensation laws adopted in those states contained a provision identical with our § 59–9–6(b). It is self-evident the laws adopted by these states and by us, all came from the same source. However, in 1937, Arizona (ch. 68, § 4, Ariz.S.L.1937) and, in 1939, Colorado (ch. 167A, § 6, Colo.Stat.Ann.1939, pock. supp.) amended the section wherein there was added after the language of the sentence italicized above, the words "which shall be deemed to be the decision of the deputy." These words were never added to our statute. However, we see nothing in the added words except an attempt at clarification. We would hazard the opinion that the question here argued had arisen in other states because of the uncertainty of the language originally employed, and that the same source from which the original act emanated then suggested a change in order that the intention be made more certain. We see in the new words added no indication that a change was intended thereby. To the contrary, we are satisfied that no other interpretation is reasonable, even in the absence of the clarifying words. To our minds, if the New Mexico legislature had adopted the change, the present uncertainty and argument would have been avoided, but the meaning of the original enactment would be unchanged.

Fifth, and finally, although the Utah statute specifically provided that the decision was a "decision of the deputy"— the language omitted from our statute—the discussion and rationale in National Tunnel & Mines Co. v. Industrial Commission, 99 Utah 39, 102 P.2d 508 (1940), to our minds supports the reasoning and conclusion advanced by us. No decision passing on the language as it appears in our statute has

come to our attention. However, see Johnson v. Pratt, 200 S.C. 315, 20 S.E.2d 865 (1942), where a right to proceed as was here attempted was not questioned. Admittedly, the South Carolina statute and our own are not identical, but they are very comparable.

The majority having come to a conclusion contrary to that which we consider correct, and not having examined the appeal on its merits, we disagree and respectfully dissent.